# Supreme Court of Texas

No. 20-0725

Patrick Von Dohlen, Brian Greco, Kevin Jason Khattar, Michael Knuffke, and Daniel Petri,

*Petitioners*,

v.

City of San Antonio,

*Respondent*

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

**Argued October 28, 2021**

JUSTICE HUDDLE delivered the opinion of the Court, in which Chief Justice Hecht, Justice Lehrmann, Justice Boyd, Justice Busby, Justice Bland, and Justice Young joined.

JUSTICE BLACKLOCK filed an opinion concurring in the judgment, in which Justice Devine joined.

The petitioners in this case allege that the San Antonio City Council voted to prohibit the opening of a Chick-fil-A in the San Antonio airport based, at least in part, on Chick-fil-A's contributions to religious organizations that councilmembers found objectionable. Some months

later, Texas enacted the "Save Chick-fil-A law." The statute prohibits a governmental entity from taking any adverse action against any person based wholly or partly on the person's membership in, affiliation with, or support of a religious organization. Petitioners, who are would-be customers of the airport Chick-fil-A, sued the City, seeking declaratory and injunctive relief, plus costs and attorney's fees.

The City raised two jurisdictional challenges: governmental immunity and lack of standing. The trial court denied both, but the court of appeals reversed on governmental-immunity grounds and dismissed the case. We hold that petitioners' live pleading does not demonstrate a waiver of governmental immunity. But because the pleading does not affirmatively negate the existence of jurisdiction, we reverse the court of appeals' judgment and remand to allow petitioners an opportunity to replead.

## I.    Background

In March 2019, the San Antonio City Council considered whether to approve a proposed concession agreement pursuant to which concessionaire Paradies Lagardère would contract with various vendors who would operate in the San Antonio International Airport. The agreement as initially proposed contemplated the installation of a Chick-fil-A in a 985-square-foot space near Gate A6.

This proposal drew opposition at the March 21, 2019 City Council meeting. According to the petition, Councilmember Roberto Treviño objected to the concession agreement's inclusion of Chick-fil-A and "announced that he wanted Chick-fil-A banned from the San Antonio airport." He elaborated: "The inclusion of Chick-fil-A as a national

2

brand tenant is something I cannot support. The heart of the LGBTQ community is in District One and the community has come together to voice its disapproval of this proposal because it includes a company with a legacy of anti-LGBTQ behavior." It is alleged that Treviño "moved to approve the agreement with Paradies Lagardère, but with an amendment [that] would direct the city's staff to work with Paradies Lagardère in replacing Chick-fil-A with another vendor."

The petition also alleges that, at that same meeting, Councilmember Manny Pelaez seconded Treviño's motion, citing Chick-fil-A's history of "funding anti-LGBTQ organizations." Petitioners allege Pelaez "explicitly stated that he wanted Chick-fil-A banned from the airport because of its donations to certain religious organizations." The petition quotes Pelaez as having said: "I want to make [] sure that when people traverse our airport, the first thing that they see is a San Antonio that is welcoming, and that they not see a symbol that for many people is a symbol of hate."

The petition alleges that some councilmembers opposed the effort to exclude Chick-fil-A from the airport. But, after debate, "the council voted 6-4, with one abstention, to approve the contract with Councilmember Treviño's amendment to ban Chick-fil-A from the airport."

The Texas Legislature responded later that year by passing Senate Bill 1978, popularly known as the "Save Chick-fil-A law." Codified at Chapter 2400 of the Government Code, the statute prohibits a governmental entity from taking "any adverse action against any person based wholly or partly on the person's membership in, affiliation

3

with, or contribution, donation, or other support provided to a religious organization." TEX. GOV'T CODE § 2400.002. Section 2400.001 defines "adverse action" to mean "any action taken by a governmental entity" to, among other things, "withhold, reduce, exclude, terminate, or otherwise deny" the following:

- any grant, contract, subcontract, cooperative agreement, loan, scholarship, license, registration, accreditation, employment, or other similar status from or to a person; or

- access to a property, educational institution, speech forum, or charitable fund-raising campaign from or to a person.

*Id*. § 2400.001(1)(A), (F).

Under the heading "Relief Available," the statute provides:

A person may assert an actual or threatened violation of Section 2400.002 as a claim or defense in a judicial or administrative proceeding and obtain: (1) injunctive relief; (2) declaratory relief; and (3) court costs and reasonable attorney's fees.

*Id*. § 2400.003(a). And Section 2400.004, entitled "Immunity Waived," provides:

A person who alleges a violation of Section 2400.002 may sue the governmental entity for the relief provided under Section 2400.003. Sovereign or governmental immunity, as applicable, is waived and abolished to the extent of liability for that relief.

*Id*. § 2400.004.

Chapter 2400 was signed into law in June 2019 and took effect September 1, 2019. Act of May 23, 2019, 86th Leg., R.S., ch. 666, 2019 Tex. Gen. Laws 1939 (current version at TEX. GOV'T CODE §§ 2400.001–

4

.005). Four days later, petitioners, who are five individuals residing in Bexar, Kendall, and Comal County, sued the City and Paradies[1] in Bexar County district court, asserting a violation of Section 2400.002. Petitioners allege that they have standing because they "use[] the San Antonio airport for travel and would patronize Chick-fil-A if the city had not banned it from the airport."

Petitioners allege "[t]he city of San Antonio is violating section 2400.002 by banning Chick-fil-A from its airport." They further allege: "The city's continued exclusion of Chick-fil-A is based 'wholly or partly' on Chick-fil-A's past and present contributions, donations, and support for certain religious organizations, including the Salvation Army and the Fellowship of Christian Athletes, which it provides through [] WinShape, its charitable foundation."

The petition requests the following relief:

- a declaration that the City violated and continues to violate Section 2400.002 by banning Chick-fil-A from the San Antonio airport;

- a temporary and permanent injunction that prevents the City from excluding Chick-fil-A from the San Antonio airport;

- a temporary and permanent injunction that compels the City to install a Chick-fil-A restaurant in the San Antonio airport, consistent with the proposal submitted by Paradies before the Treviño amendment;

- a temporary and permanent injunction that prohibits the City from taking any adverse action

---

[1] Paradies filed a Rule 91a motion to dismiss, was nonsuited, and is no longer a party. Chick-fil-A has never been a party.

5

against Chick-fil-A or any other person or entity based wholly or partly on that person or entity's support for religious organizations that oppose homosexual behavior;

- all costs of suit and reasonable attorney's fees; and

- all other appropriate relief.

To support their request for a temporary injunction, petitioners allege they "will suffer probable, imminent, and irreparable injury absent a temporary injunction." They add that "[t]he plaintiffs have a probable right to relief because Councilmember Treviño and Pelaez's statements show that the city's exclusion of Chick-fil-A from the San Antonio airport is at least 'partly' based on Chick-fil-A's donations to a religious organization."

The City sought dismissal based on governmental immunity and lack of standing. The City argues, first, that Chapter 2400 does not reach the City's March 21, 2019 conduct—the City Council's vote to amend the concession agreement to exclude Chick-fil-A—because Chapter 2400 was not in effect at the time, and the petition alleges no facts to support the notion that the City violated Section 2400.002 on or after its September 1, 2019 effective date. The City's standing challenge is premised on its contention that petitioners have suffered no injury in fact because being deprived of the ability to buy Chick-fil-A products at the airport is not a concrete, particularized injury, either actual or imminent.

Petitioners dispute the City's contention that Section 2400.004 authorizes lawsuits only by the person who has suffered adverse action at the hands of the governmental entity. They argue that, under Section

2400.004, a person need only "allege" a violation to sue, regardless of whether that person was the victim of the adverse action. They argue, in the alternative, that if a concrete, particularized injury must be shown, theirs qualify. With respect to the statute's temporal reach, petitioners acknowledge that Chapter 2400 did not take effect until September 1, 2019, and is not retroactive. They agree therefore that the City Council's March 21, 2019 vote did not violate Chapter 2400. Rather, they argue the City's exclusion of Chick-fil-A was "ongoing" and that they seek relief solely for the City's actions on or after September 1, 2019.

After a hearing, the trial court denied the City's jurisdictional challenges, and the City appealed. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8). The Fourth Court of Appeals reversed the trial court's order denying the City's plea to the jurisdiction and rendered judgment dismissing the case for lack of jurisdiction. 612 S.W.3d 503, 505 (Tex. App.—San Antonio 2020). The court of appeals rejected petitioners' argument that immunity was waived. *Id.* at 507–08. It concluded that, although petitioners purported to be seeking only prospective relief, the only plausible remedy for petitioners' claims was invalidation of the previously enacted concession agreement. *Id.* at 507. The court of appeals further held that petitioners' pleading was incurably defective and thus dismissed the case without providing them an opportunity to replead. *Id.* at 508. The court of appeals did not address standing.

In this Court, petitioners ask us to address standing and governmental immunity. They argue that they have demonstrated a waiver of immunity by alleging a violation of Section 2400.002 and

7

seeking declaratory and injunctive relief under Section 2400.003. Petitioners also assert that Chapter 2400 confers standing and, therefore, their argument goes, they need not demonstrate a concrete, particularized injury. Petitioners argue alternatively that even if these standing requirements did apply, they are satisfied here because they have suffered or are at imminent risk of suffering a concrete and particularized injury that is traceable to the City's conduct and will be redressed by a favorable decision.

## II. Governmental Immunity

### A. General Principles

We begin with immunity, the basis for the court of appeals' decision. Governmental immunity protects the State's political subdivisions, including its cities, against suits and legal liability. *Hillman v. Nueces County*, 579 S.W.3d 354, 357 (Tex. 2019); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). Governmental immunity therefore bars suit against the City of San Antonio unless the Legislature has waived the City's immunity. *Chambers–Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 344 (Tex. 2019). Cities retain immunity unless the Legislature clearly and unambiguously waives it. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 330 (Tex. 2006) ("[A] statute that waives the State's immunity must do so beyond doubt . . . ." (quoting *Taylor*, 106 S.W.3d at 697)). We defer to the Legislature in waiving immunity because it is in a better position to weigh the conflicting public policy interests associated with subjecting the government to liability. *See Wasson Ints., Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 432–33 (Tex. 2016).

8

Governmental immunity encompasses two related but distinct concepts: "immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." *Tooke*, 197 S.W.3d at 332. A statute can waive immunity from suit, immunity from liability, or both. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009). Only immunity from suit implicates a court's subject-matter jurisdiction. *Hillman*, 579 S.W.3d at 357. Thus, immunity from suit is properly raised in a plea to the jurisdiction while immunity from liability is not. *Taylor*, 106 S.W.3d at 696 ("Unlike immunity from suit, immunity from liability does not affect a court's jurisdiction to hear a case and cannot be raised in a plea to the jurisdiction.").

In some instances, though, the Legislature has waived immunity from suit "to the extent of liability," which merges the two. *See, e.g., Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004) ("The Tort Claims Act creates a unique statutory scheme in which the two immunities are co-extensive: 'Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter.'" (quoting TEX. CIV. PRAC. & REM. CODE § 101.025(a))). These immunity waivers collapse the jurisdictional and merits inquiries to some degree. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 784 (Tex. 2018). When a statute waives immunity from suit to the extent of liability, it directs the inquiry to the statute's elements and may require a court to consider those elements at both the jurisdictional and merits stages. *See Lueck*, 290 S.W.3d at 883 (holding that certain elements of

9

the Whistleblower Act "can be considered to determine both jurisdiction and liability").

When immunity is waived for an alleged violation of a statute, at the jurisdictional stage, a plaintiff must "actually allege" a violation of the statute. *Id.* at 881. "Mere reference" to the statute's elements in the pleading is not enough. *Tex. Dep't of Crim. Just. v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). A plaintiff "actually alleges" violation of a statute "by pleading facts that state a claim thereunder." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012); *see also Reynosa v. Univ. of Tex. Health Sci. Ctr.*, 57 S.W.3d 442, 444 (Tex. App.—San Antonio 2001, pet. denied) ("The plaintiff has the burden to allege facts that affirmatively demonstrate the lack of governmental immunity and, hence, the court's jurisdiction to hear the cause."). Requiring the plaintiff's pleading to stand on more than bare allegations to trigger immunity protects the use of pleas to the jurisdiction, a longstanding "procedural vehicle to challenge subject matter jurisdiction" that has been used in our "trial courts for over a century and a half." *Lueck*, 290 S.W.3d at 884 (quoting *Miranda*, 133 S.W.3d at 232).

"When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d at 226. If the pleading does not contain sufficient facts to demonstrate the court's jurisdiction but also does not affirmatively demonstrate incurable defects, the plaintiffs are given an opportunity to amend. *Id.* at 226–27. But if the pleading affirmatively negates

jurisdiction, then the plea to the jurisdiction should be granted without the opportunity to amend. *Id.* at 227; *see also Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) ("[A] pleader must be given an opportunity to amend in response to a plea to the jurisdiction only if it is possible to cure the pleading defect.").

**B.    Analysis**

As noted, Chapter 2400 explicitly waives sovereign and governmental immunity when a person "alleges" a violation of Section 2400.002.  The relevant provision states:

> A person who alleges a violation of Section 2400.002 may sue the governmental entity for the relief provided under Section 2400.003.  Sovereign or governmental immunity, as applicable, is waived and abolished to the extent of liability for that relief.

TEX. GOV'T CODE § 2400.004.

Petitioners allege the City "is violating" Section 2400.002.  In the "Factual Allegations" section of their pleading, petitioners describe at length the history of Chick-fil-A's commitment to Christian organizations and the public statements of Chick-fil-A's then-COO, Dan Cathy.  The petition also details the efforts by "activists" to attack Chick-fil-A "because it gives money to Christian organizations that accept the Bible as the Word of God."  Petitioners then describe in detail the process by which the City ultimately approved the amended concession agreement for the San Antonio airport that would replace Chick-fil-A with another vendor, including multiple quotes from councilmembers on both sides of the debate.  All of the factual allegations describing actions by the City relate to conduct that occurred at the March 21, 2019 City

11

Council meeting, well before the statute's September 1, 2019 effective date.

There is an assertion that the City's alleged violation is continuing in nature. Under the heading "Cause of Action," petitioners allege:

> The city of San Antonio *is violating* section 2400.002 by banning Chick-fil-A from its airport. The city's *continued exclusion* of Chick-fil-A is based "wholly or partly" on Chick-fil-A's past and present contributions, donations, and support for certain religious organizations, including the Salvation Army and the Fellowship of Christian Athletes . . . . [Emphasis added.]

But the petition alleges no facts to support this assertion; it nowhere describes any "action" by the City after September 1, 2019, that could constitute a violation, as the statute requires. *See id.* § 2400.001(1) (defining "adverse action" as "any *action* taken by a governmental entity" to, among other things, withhold, exclude, or deny a contract or access to a property (emphasis added)). At oral argument, petitioners asserted that the City is taking actions to implement the agreement approved by the City Council and urged us to conclude that is sufficient to invoke Section 2400.004's waiver of immunity. But petitioners conceded that they have not alleged facts describing any actions relating to the agreement's implementation. Indeed, they concede that, without the benefit of discovery, petitioners do not know what those actions may be.

Petitioners argue they are not required, at this stage of the litigation, to allege facts sufficient to demonstrate a waiver of immunity because Section 2400.004 permits any person to "sue the governmental

entity for the relief provided under Section 2400.003" merely by alleging in conclusory fashion that the governmental entity committed "a violation of Section 2400.002." *See id.* § 2400.004 ("A person who alleges a violation of Section 2400.002 may sue the governmental entity for the relief provided under Section 2400.003.").[2] But under our precedents applying similar immunity-waiver language in other statutes, such a bare assertion of a violation is insufficient. To invoke a waiver of immunity, petitioners must allege facts to support their claim that the City has violated Chapter 2400. *See Lueck*, 290 S.W.3d at 884; *Miranda*, 133 S.W.3d at 230.

*Lueck* is instructive because the Whistleblower Act's immunity provision is virtually identical to Section 2400.004: it states that "[a] public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter" and that "[s]overeign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter." TEX. GOV'T CODE § 554.0035. A violation of the Whistleblower Act occurs when a governmental entity takes an adverse personnel action against a public employee who in good faith reports "a violation of law" by the employer or another employee to "an appropriate law enforcement authority." *Id.* § 554.002(a). In *Lueck*, the

---

[2] The City argued in its Rule 91a motion that "[a] person" entitled to sue under Sections 2400.003 and 2400.004 must be a person against whom an alleged adverse action was taken. Under the City's view, petitioners could not sue under Chapter 2400 because no adverse action was alleged to have been taken against them (as opposed to Chick-fil-A). Given our disposition, we express no opinion on the issue and instead note that it may need to be addressed on remand.

plaintiff sued the Texas Department of Transportation (TxDOT) for allegedly firing him in violation of the Whistleblower Act. 290 S.W.3d at 879. Lueck was tasked with coordinating with a private vendor to develop the agency's Statewide Traffic Analysis and Reporting System (STARS), a program designed to collect, analyze, and report traffic data. *Id.* After a billing dispute with the vendor caused TxDOT to suspend work on STARS, Lueck sent an email to his supervisor warning him not to terminate the contract with the vendor because, without STARS, TxDOT "is not capable of handling this data and will, therefore, never be in compliance" with state and federal law. *Id.* TxDOT terminated the contract and fired Lueck on the basis that he knew the vendor had overcharged TxDOT. *Id.*

Lueck's petition alleged that the email to his supervisor constituted a report of a violation of law to an appropriate law enforcement authority because it reported that TxDOT would violate state and federal law if TxDOT did not resolve the dispute with the vendor. TxDOT filed a plea to the jurisdiction on immunity grounds, arguing that Lueck's report did not invoke the Whistleblower Act's waiver of immunity because he (1) did not actually report a violation of law and (2) sent his report to his supervisor rather than an appropriate law enforcement authority. *Id.* at 880. Lueck countered that his allegations of a Whistleblower Act violation, standing alone, triggered the statute's waiver of immunity. *Id.* at 879–80.

We cautioned that, when a statute waives immunity for one who "alleges a violation" of the statute, it is not enough for the pleading to have "merely referenced the chapter" to invoke a waiver. *Id.* at 882.

14

Rather, we held that the Whistleblower Act's immunity provision required Lueck to "actually allege a violation" of the statute, meaning the statute's underlying elements were relevant to determining whether immunity had been waived. *Id.* at 881. Lueck's pleading affirmatively demonstrated that he did not allege a violation of the statute because his report detailed regulatory non-compliance, not a violation of law, and was sent to his supervisor, not a law enforcement authority. *Id.* at 885–86. We explained that, although a plaintiff does not have to "prove his claim" at the jurisdictional stage, "bare allegations" are not enough to waive immunity when immunity is predicated on "alleg[ing] a violation" of a statute. *Id.* at 884. Otherwise, any superficial reference to the statute in a pleading would be sufficient to waive immunity, a result the Legislature did not intend. *Garcia*, 372 S.W.3d at 637.

The Texas Tort Claims Act (TTCA) also contains an immunity-waiver provision like Chapter 2400. *See* TEX. CIV. PRAC. & REM. CODE § 101.025(a) ("Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter."). Our cases interpreting the TTCA similarly look to the statute's underlying elements in determining whether immunity has been waived. *See, e.g.*, *Miranda*, 133 S.W.3d at 225. In *Miranda*, a woman sustained injuries after a tree limb fell on her at a state park. *Id.* at 220. The Mirandas sued the Texas Parks and Wildlife Department for negligence and gross negligence. *Id.* at 220–21. The Department filed a plea to the jurisdiction based on sovereign immunity. *Id.* at 221.

We noted that the TTCA waives sovereign immunity for claims arising from premises defects and incorporates the limitations on

liability articulated in the recreational use statute under Chapter 75. *See* TEX. CIV. PRAC. & REM. CODE § 101.058 ("To the extent that Chapter 75 limits the liability of a governmental unit under circumstances in which the governmental unit would be liable under [the TTCA], Chapter 75 controls."). Because the Mirandas were camping and picnicking at the time of the incident, we looked to the recreational use statute to determine whether immunity was waived under the TTCA. *Miranda*, 133 S.W.3d at 225. The recreational use statute limits the Department's duty for premises defects to that owed to a trespasser, and thus sovereign immunity was waived only if the governmental entity was grossly negligent. *Id.* We explained that for immunity to be waived the Mirandas had to "allege sufficient facts to establish that the Department was grossly negligent." *Id.* at 230. Turning to the pleadings, we held that the Mirandas met that standard by detailing several factual allegations, including that Miranda was struck by a falling tree branch that severely injured her; that the unpruned and uninspected tree branches created a dangerous, defective condition; and that the Department knew of the dangers of the tree branches but failed to make the premises safe or warn her of the danger. *Id.*

Consistent with *Lueck* and *Miranda*, to waive immunity, a plaintiff must plead sufficient facts to actually allege a violation of Chapter 2400. The immunity provision in Section 2400.004 directs the inquiry to Section 2400.002, which prohibits "adverse actions" based in part on support of a religious organization. TEX. GOV'T CODE §§ 2400.002, .004. And Section 2400.001 defines "adverse action" to require an "action" by the governmental entity. *Id.* § 2400.001(1). Thus,

16

to invoke Section 2400.004's waiver of immunity, a plaintiff must plead facts describing actions that constitute the prohibited "adverse action" the governmental entity took based on a person's membership in, affiliation with, or support provided to a religious organization.

Here, petitioners do not plead sufficient facts to "actually allege a violation" of Chapter 2400 because they fail to point to any specific "action" the City took on or after September 1, 2019, that could constitute an "adverse action" under Section 2400.002. *See Lueck*, 290 S.W.3d at 881. The City Council's vote to adopt the Treviño amendment and thereby exclude Chick-fil-A from the airport cannot constitute an adverse action because all agree it occurred six months before Chapter 2400 took effect. Because there is no factual allegation to support petitioners' assertion that the City has taken actions that could constitute an adverse action after the statute's effective date, the petition is insufficient to invoke Section 2400.004's waiver of immunity. *See id.* at 884.

Our concurring colleagues concede that the petition alleges no adverse action by the City after Chapter 2400's effective date. Yet, in their view, petitioners have sufficiently alleged a credible threat of a violation because the City Council's vote and other conduct pre-dating Chapter 2400's effective date constitute "forward-looking direction" from the City Council, which allows "a permissible assumption" that the City would violate Chapter 2400 after it became effective. *Post* at 5 (Blacklock, J., concurring in the judgment). The concurrence relies on *In re Abbott*, 601 S.W.3d 802 (Tex. 2020), in which we held that judges challenging an executive order lacked standing. We reasoned that

17

although "[a] plaintiff does not need to be arrested and prosecuted before suing to challenge the constitutionality of a criminal law," he does have to allege, among other things, that a credible threat of prosecution exists. *Id.* at 812. We question the relevance of *Abbott*'s standing analysis to this immunity issue. But, more importantly, we do not think the City's March 2019 conduct standing alone permits a reasonable inference that there exists a "credible threat" of a post-September 1, 2019 adverse action against Chick-fil-A by the City. Indeed, the contrary is true. Rather than assume the City would violate Chapter 2400, we presume the City would *comply* with Chapter 2400, until the contrary is shown. *See Avelo Mortg., LLC v. Infinity Cap., LLC*, 366 S.W.3d 258, 263 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("In the absence of evidence to the contrary, it is presumed that . . . a public official discharges his duty or performs an act required by law in accordance with the law."); *Sanchez v. Tex. Indus., Inc.*, 485 S.W.2d 385, 387 (Tex. App.—Waco 1972, writ ref'd n.r.e.) ("The law presumes, until the contrary is shown, that every public official will discharge the duties imposed upon him by the law.").[3] Because petitioners have not alleged a violation of Chapter 2400—and we cannot assume one—we hold that petitioners have not invoked a waiver of governmental immunity.[4]

---

[3] This principle coheres with similar presumptions that governmental officials will act in accordance with law. *See In re D.W.*, 249 S.W.3d 625, 635 (Tex. 2008) ("We start with the presumption that the legislature intended to comply with the United States and Texas constitutions."); *In re C.J.C.*, 603 S.W.3d 804, 820 (Tex. 2020) ("We are confident the trial court will comply; our writ [of mandamus] will issue only if it fails to [vacate its temporary orders].").

[4] Our concurring colleagues argue that we should infer a credible threat of a post-September 1, 2019 adverse action based on the City's argument in the

18

The question then becomes whether petitioners are entitled to an opportunity to amend. Texas courts allow parties to replead unless their pleadings demonstrate incurable defects. *See Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 623 (Tex. 2011) ("When this Court upholds a plea to the jurisdiction on sovereign immunity grounds, we allow the plaintiff the opportunity to replead if the defect can be cured."); *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009) ("The allegations found in the pleadings may either affirmatively demonstrate or negate the court's jurisdiction. If the pleadings do neither, it is an issue of pleading sufficiency and the plaintiff should be given an opportunity to amend the pleadings." (citations omitted)); *Miranda*, 133 S.W.3d at 226–27 ("If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court[']s jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to

court of appeals that its March 2019 vote would not have violated Chapter 2400 even if it had occurred after Chapter 2400 became effective. *Post* at 4 n.3 (noting the City argued that no "statement or action taken on March 21, 2019 would constitute a violation of Chapter 2400, even if the statute had been in effect at that time"). But we cannot abandon our longstanding, objective pleading requirements governing immunity cases based on the City's legal posturing. Our precedents do not allow parties to invoke a waiver of immunity on conclusory or barebones pleading—they require more detailed pleading that is simply absent from the petition. In the absence of such allegations, we cannot assume that the City would violate or threaten violation of Chapter 2400 after its effective date. Indeed, as our concurring colleagues concede, information outside the record suggests the City dropped its earlier opposition to Chick-fil-A's presence at the airport. *Post* at 5 n.4 (noting that "[i]nformation outside the pleadings indicates that, since the time the petition was filed, . . . the City may have dropped its opposition to Chick-fil-A's presence at the airport"). In any event, as noted below, petitioners will have the opportunity on remand to plead any details our concurring colleagues would have us infer.

amend."). Texas law does not favor striking defective pleadings without providing plaintiffs an opportunity to replead. *KSNG Architects, Inc. v. Beasley*, 109 S.W.3d 894, 898 (Tex. App.—Dallas 2003, no pet.); *see also Robinson v. Alief Indep. Sch. Dist.*, 298 S.W.3d 321, 328 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("[T]he general rule expresses a preference to allow a plaintiff the opportunity to amend . . . ."). Thus, so long as petitioners' pleading does not affirmatively demonstrate the absence of jurisdiction, they should be given an opportunity to amend.

Petitioners' pleading does not allege sufficient facts to support their assertion that the City took an adverse action on or after September 1, 2019. But neither does the petition affirmatively negate jurisdiction. Thus, the pleading here differs from that in *Lueck*, where the plaintiff's petition affirmatively showed that his "report" was not reporting a violation of law to an appropriate law enforcement authority and, therefore, he could not allege a violation of the Whistleblower Act. 290 S.W.3d at 885. Because petitioners' pleading does not contain sufficient facts to demonstrate either the court's jurisdiction or incurable defects, petitioners should be given an opportunity to amend. *Miranda*, 133 S.W.3d at 227. This conclusion does not mean petitioners will be required to marshal evidence and prove their claim to invoke the waiver of immunity. They need only plead facts supporting the elements of the statutory cause of action—here, facts describing the "actions" the City took that constitute an alleged violation of Section 2400.002. *See Garcia*, 372 S.W.3d at 637.

### III.  Standing

Petitioners urge us to reach standing, which was raised in the trial court but not addressed by the court of appeals.  The City argued in its Rule 91a motion that the petitioners lack standing because (1) they do not fall within the class of plaintiffs whom the Legislature has authorized to sue and (2) their injury is not a concrete, particularized injury, either actual or imminent.  *See Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 696 (Tex. 2021) ("To maintain standing, a plaintiff must show: (1) an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the defendant's challenged action; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."); *see also Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*, 616 S.W.3d 558, 567 (Tex. 2021) (discussing the proper use of the term "standing"); *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 773–74 & nn.2–6 (Tex. 2020) (same).

Petitioners argue first that they have standing based on Section 2400.004.  *See* TEX. GOV'T CODE § 2400.004 ("A person who alleges a violation of Section 2400.002 may sue the governmental entity for the relief provided under Section 2400.003.").  They contend that because the Legislature created this private right of action and they fall within the class of persons authorized to sue, they need not plead an injury in fact.  In their view, it matters not that petitioners themselves were not the parties excluded from the San Antonio airport.  Petitioners further argue that, even if they are required to satisfy the usual standing elements, those elements are met here because "the denial of a preferred

21

eating option at the airport" is a sufficiently concrete and particularized injury.

In response, the City notes that the U.S. Supreme Court recently rejected a similar argument. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) ("Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm . . . ."). Because we have "adopted the federal requirements for standing," *Data Foundry*, 620 S.W.3d at 696, the City argues that petitioners' standing argument necessarily fails in Texas courts. The City further counters that petitioners' injuries are insufficiently concrete.

Because we hold that petitioners have not demonstrated a waiver of governmental immunity and should have the opportunity to replead, we decline petitioners' invitation to address standing at this stage. Standing should be determined based on a plaintiff's live pleading, and it would be premature for us to weigh in on the City's standing arguments before petitioners have repleaded. *See Jasek v. Tex. Dep't of Fam. & Protective Servs.*, 348 S.W.3d 523, 527 (Tex. App.—Austin 2011, no pet.) ("[A]nalysis of whether a party has standing begins with the plaintiff's live pleadings."). On remand, the trial court and the court of appeals may have an opportunity to address the important questions raised on the issue with the benefit of full briefing and argument. *See City of Fort Worth v. Rylie*, 602 S.W.3d 459, 469 (Tex. 2020) ("Because the question presents an important issue of first impression in this Court, we decline to address the question in the first instance and defer

instead for the court of appeals to address it after full briefing and argument by the parties."); *Wasson Ints.*, 489 S.W.3d at 439 (remanding case for "court of appeals to address [unaddressed] questions in the first instance").[5]

## IV.   Conclusion

Government Code Section 2400.004 requires more than conclusory references to the statute's elements.  To invoke the waiver of immunity, a plaintiff must plead sufficient facts to actually allege a violation of Section 2400.002.  We hold that petitioners' pleading does not allege sufficient facts to invoke Chapter 2400's waiver of governmental immunity.  But because the pleading also does not affirmatively negate jurisdiction, petitioners are entitled to an opportunity to replead.  Accordingly, we reverse the court of appeals' judgment dismissing the case for lack of jurisdiction and remand to the trial court to give them that opportunity.

---

[5] Finally, we note this case may present another jurisdictional issue that has not yet been addressed and should be considered on remand: whether Chick-fil-A's public statement that it is no longer interested in pursuing a space in the San Antonio airport renders the case moot.  Acacia Coronado, *Chick-fil-A no longer pursuing restaurant at San Antonio airport after chain's plans denied more than a year ago*, USA TODAY, Sept. 14, 2020.  Our courts address issues concerning subject-matter jurisdiction sua sponte.  *See State ex rel. Best v. Harper*, 562 S.W.3d 1, 6–7 (Tex. 2018) ("Harper argues we cannot address mootness at all because the trial court's record contains no evidence that he lost his reelection bid . . . .  But we must consider issues affecting our jurisdiction sua sponte.").

_____
Rebeca A. Huddle
Justice

**OPINION DELIVERED:** April 1, 2022